UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEON DAJUAN DAVIS,

CASE NO. 17-cv-13378

v.

HON. DENISE PAGE HOOD

WARDEN WILLIS CHAPMAN,

_____/

## OPINION AND ORDER
## DENYING THE HABEAS CORPUS PETITION,
## DENYING A CERTIFICATE OF APPEALABILITY, AND
## GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Keon Dajuan Davis filed a *pro se* habeas corpus petition

challenging his Michigan conviction for second-degree murder, Mich. Comp. Laws

§ 750.317. (ECF No. 1.) The petition raises eight claims about the admission of

certain evidence, the sufficiency and weight of the evidence at trial, the state trial

court's jury instructions, the prosecutor's conduct, trial counsel, and the totality of

trial errors. (*Id*. at PageID.5-11, 35-37.) The State urges the Court to deny the

habeas petition on grounds that Petitioner's claims are not cognizable on habeas

review, are procedurally defaulted, or were reasonably decided by the Michigan

Court of Appeals on direct review. (ECF No. 6, PageID.128-131.) Having reviewed

the pleadings and the state-court record, the Court concludes that Petitioner's claims

do not warrant habeas corpus relief. The Court, therefore, will deny the petition.

# I.  Background

Petitioner was charged with open murder in Wayne County, Michigan.[1]  The charges arose from the fatal shooting of Calvin Warrington Bryant.  Petitioner was tried jointly with his co-defendant, Damontay Harvey ("Harvey), in Wayne County Circuit Court.[2]  The Michigan Court of Appeals summarized the facts as follows:

> The victim was fatally shot near the intersection of West Warren and McKinley in the city of Detroit on December 1, 2012, at approximately 10:30 p.m. as he was walking away from the Yellow Apple market. There were no witnesses to the shooting.  Several surveillance videos obtained from the market were used to identify the victim and the two defendants at the market. Defendants Davis and Harvey separately identified themselves in the videos.
>
> Both defendants arrived at the market in a blue Buick.   Video surveillance cameras showed the victim and defendants in the market, each approaching the counter at different times.  The videos depicted the victim leaving the store and defendants bypassing the blue Buick and following the victim on foot across Warren.   The Buick then followed.  The videos did not show the shooting or either defendant in possession of a gun.   The videos did include footage of a person entering the Buick after the shooting, after which the vehicle drove away.  The prosecution's theory at trial was that defendants were the two males who followed the victim after he left the Yellow Apple market, shot him a short distance from the market, and then left the scene in the blue Buick that was waiting nearby.

---

[1]  The open murder charge included first-degree premeditated murder, first-degree felony murder, and second-degree murder.  (10/29/13 Trial Tr., ECF No. 7-14, PageID.1016.)

[2]  The two defendants had separate juries.

*People v. Davis*, No. 319483, 2015 WL 8953522, at *1 (Mich. Ct. App. Dec. 15, 2015).

Petitioner did not testify or present any witnesses.  His defense was that the prosecution failed to prove its case beyond a reasonable doubt.  The jury apparently was unpersuaded by the argument, and on October 31, 2013, it found Petitioner guilty of second-degree murder.  (10/31/13 Trial Tr., ECF No. 7-16, PageID.1040.)  On November 19, 2013, the trial court sentenced Petitioner to prison for thirty to sixty years with credit for 344 days served in jail.  (11/19/13 Sentence Tr., ECF No. 7-17, PageID.1055.)

Petitioner raised his habeas claims and two additional claims about the scoring of the sentencing guidelines and the trial court's assessment of court costs in an appeal as of right.  On December 15, 2015, the Michigan Court of Appeals affirmed Petitioner's convictions, but remanded his case to the trial court for a determination of the factual basis for the costs imposed and for consideration of whether resentencing was appropriate under *People v. Lockridge*, 498 Mich. 358; 870 N.W.2d 502 (2015).

Petitioner raised his habeas claims in a subsequent application for leave to appeal in the Michigan Supreme Court.  On July 26, 2016, the state supreme court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Davis*, 499 Mich. 987; 882 N.W.2d 149 (2016).

3

Petitioner filed his habeas corpus petition on October 13, 2017. His supporting brief is the brief that he presented to the Michigan Supreme Court. The Court proceeds to address Petitioner's claims, using the following standard.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. §§ 2254(d)(1) and (d)(2)).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*,  521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's

4

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Only an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

The Court's review generally is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The Court presumes that a state-court's factual determinations are correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III.  Discussion

### A.  Testimony about the Surveillance Videotapes

Petitioner alleges first that the trial court violated his right of confrontation and his rights to due process and a fair trial by allowing two police officers to present improper testimony about surveillance videotapes taken from the market where Petitioner first encountered the victim.   Petitioner's claim arises from the trial court's construction of Michigan Rules of Evidence 701 and 702.  He asserts that :

(1) some of the videotapes were cropped and enlarged to the point of being impossible to view; (2) the two police officers testified to being able to see things that cannot be seen in the videotapes; (3) the officers' testimony was inadmissible hearsay and violated his right of confrontation; and (4) the officers' testimony impermissibly encroached on the jury's province.   (ECF No. 1, PageID.52-53.)

Sergeant Ron Gibson testified about the content of a videotape which was shown to the jurors.  According to his narration at trial, the videotape showed the following activity.  "Subject A" got out of the rear door of a vehicle and entered the party store.  The victim subsequently exited the store with a white bag and stopped to talk to someone in a small white or silver car.  As the victim was conversing with someone in the small car, "Subject B" exited the front passenger side of the subjects' vehicle and glanced at the victim.  Subject B then entered the store and appeared to say something to Subject A.  Subjects A and B then walked out of the store and followed the victim who was walking down Warren Avenue by then.  The vehicle in which the two subjects arrived at the store subsequently pulled out of the parking lot, traveled in the same direction as Subjects A and B, and then turned left.

Sergeant Gibson explained that the videotape became extremely pixillated at some point and that the individuals appeared as pixels moving in the dark.  He thought that the two subjects closed the gap between themselves and the victim and that the victim stood still when the two other subjects approached him.  Something

6

white, consistent with the victim's white bag, quickly crossed Warren Avenue, followed by two other individuals.  The individuals were no longer visible at that point, but the vehicle stopped, and an area lighted up, consistent with a car door opening.  The vehicle then moved out of view.  (10/25/13 Trial Tr., ECF No. 7-12, PageID.823-835); 10/28/213 Trial Tr., ECF No. 7-13, PageID.843-860.)

Petitioner claims that the jury was permitted to treat Gibson's speculative testimony about what the videotapes depicted as reliable expert opinion, even though most of Gibson's testimony did not qualify as expert testimony under Michigan Rule of Evidence 702 ("Testimony by Experts").  (ECF No. 1, PageID.61-65.)   Petitioner asserts that Gibson's testimony was prejudicial because he communicated to the jury that Petitioner was one of the perpetrators of the crime.  (*Id*. at PageID.67-68.)

Sergeant Edward Brannock likewise testified about the content of the videotapes.  (10/24/13 Trial Tr., ECF No. 7-11, PageID.602-606, 609, 614-615, 624-627.)  Petitioner claims that Brannock's testimony was improperly admitted as lay opinion because Brannock narrated the videos and interpreted the videos to support the prosecution's theory even though the jury was as capable of observing the videos as Sergeant Brannock.  (ECF No. 1, PageID.56.)

`      Petitioner states that Brannock and Gibson should not have been allowed to tell the jury what conclusions to draw from the videos, because in doing so, the officers invaded the province of the jury.  (*Id*. at PageID.70.)  Petitioner concludes

that he was convicted primarily on the officers' speculative and conclusory testimony, not proper evidence.  (*Id*. at PageID.68, 70.)

### 1.  Clearly Established Federal Law

The Michigan Court of Appeals concluded on review of Petitioner's claim that the trial court did not abuse its discretion in admitting the challenged testimony. This Court finds no merit in Petitioner's claim because it is based primarily on Michigan Rules of Evidence 701 and 702.

Federal habeas courts usually do not question state-court rulings on the admission of evidence under state law, *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988), and the contention that the state court violated Michigan's Rules of Evidence is not a cognizable claim on federal habeas corpus review.  *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009).  When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Although Petitioner alleges that the officers' testimony also violated his rights to due process and a fair trial, "states have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017).  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules," *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983), and "[a] habeas petitioner's challenge to

an evidentiary ruling cannot satisfy § 2254(d)(1) unless the petitioner identifies a Supreme Court case establishing a due process right with regard to [the] *specific kind of evidence* at issue." *Keahey v. Marquis*, 978 F.3d 474, 479 (6th Cir. 2020) (citing *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020)) (second alteration and emphasis in original; quotation marks omitted).  A state court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief unless the error rendered "the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

Petitioner also claims that the officers violated his Sixth Amendment right to be confronted with the witnesses against him.  This right is "applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it "includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

### 2.  Application

Sergeant Gibson was qualified as an expert witness in video extraction and analysis.  (10/25/13 Trial Tr., ECF No. 7-12, PageID.803-804.)   Of particular significance here is his testimony that he never identified Petitioner as one of the subjects in the videotapes. (10/28/13 Trial Tr., ECF No. 7-13, PageID.871.)  Further, as noted by the Michigan Court of Appeals, Gibson "explained how to interpret the

enlarged video, which to the untrained eye appears to be dots of light moving in darkness." *Davis*, 2015 WL 8953522, at *7.  The Court of Appeals opined that, "[a]lthough most lay persons could probably figure out that the pairs of lights moving in a straight direction were headlights of a car, most lay persons would require instruction to recognize that the moving pixels depict people walking, or to recognize that a white image is a plastic store bag." *Id*.

The Court of Appeals concluded that "Gibson's testimony explaining how the enlarged images relate to the images in the original video was within the scope of his expertise on 'scientific, technical, or otherwise specialized knowledge' that would 'assist the trier of fact to understand the evidence or to determine a fact in issue.' " *Id*. (quoting Michigan Rule of Evidence 702 on expert testimony).  The Court of Appeals also stated: "Sergeant Gibson's testimony that the moving figures in the enlarged video corresponded to the moving persons in the normal size video, was rationally based on his own observations of the video."

The Court of Appeals also rejected Petitioner's claim about Sergeant Brannock, stating that Brannock did not give improper lay witness opinion testimony.  The Court of Appeals noted that "Brannock testified from his own observations of the surveillance video and the driver's license copy provided by the store employee, that Davis . . . was one of the persons who followed the victim out of the store and across Warren." *Id*.  Petitioner, in fact, stipulated that he was one of

the suspects depicted in a videotape inside the market and that an employee of the market had identified him in the videotape as a regular customer.  (10/24/13 Trial Tr., ECF No. 7-11, PageID.608-610.)

Petitioner has not pointed to any Supreme Court decision that prohibits state prosecutors from relying on expert or lay opinion testimony about surveillance videotapes.  And for reasons given by the Michigan Court of Appeals, it was not fundamentally unfair to admit Gibson's and Brannock's testimony regarding the videotapes at issue in Petitioner's case.  Petitioner's right to due process was not violated by the officers' testimony.

Although Petitioner contends that the videotapes were hearsay and that the officers' testimony violated Michigan's rules on hearsay and his right to confront the evidence against him (ECF No. 1, PageID.64-65), the Michigan Court of Appeals rejected this argument.  The Court of Appeals stated that the videos did not qualify as hearsay under state law and that Petitioner was afforded an opportunity to cross-examine Sergeants Gibson and Brannock.  *Davis*, 2015 WL 8953522, at *8.

"[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the state appellate court's interpretation of Michigan's hearsay rules binds this Court on habeas review, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  The state court's rejection of Petitioner's argument under

the Confrontation Clause is supported by the record.  As pointed out by the Michigan

Court of Appeals, defense counsel

> questioned Gibson about the range of the camera, and his compilation
> of the sequential video. He elicited Gibson's admission that the
> defendants did not participate in the compilation of the sequential
> video.  He also elicited Gibson's admission that Gibson did not see a
> weapon discharge, and that he did not identify the subjects in the videos
> as defendants.  Gibson also admitted that he lost sight of the subjects
> after they crossed Warren.

*Davis*, 2015 WL 8953522, at *8.

Petitioner was given an opportunity to cross-examine Sergeants Gibson and

Brannock, and he made good use of the opportunity.  The state court's rejection of

Petitioner's claim under the Confrontation Clause was not contrary to, or an

unreasonable application, of Supreme Court precedent.   Habeas relief is not

warranted on Petitioner's claim about the police officers' expert and lay opinion

testimony.

## B.  The Expert Witness's Methodology and Manipulation of the Videotapes

Petitioner's second claim is a challenge to Sergeant Gibson's method of

enlarging, cropping, and otherwise manipulating the surveillance videotapes.

According to Petitioner, the prosecutor failed to establish that Sergeant Gibson's

technical methodology was based on principles and methods generally accepted

within the scientific community.  (ECF No. 1, PageID.71, 74.)  Petitioner further

alleges that the trial court erred by permitting Sergeant Gibson to testify as an expert witness on his manipulation of the videotapes.  (*Id*. at PageID.71.)

Petitioner concedes that Gibson could testify about the processes he used to enlarge and manipulate the videos in an attempt to see what was in them, but he contends that it was improper for Sergeants Gibson and Brannock to tell the jury what was depicted in the videos.  (*Id*. at PageID.74.)  Petitioner claims that Gibson's testimony was prejudicial because Gibson used the videotapes to inform the jurors that Petitioner and Harvey were Subjects A and B, that the two subjects could be seen following the victim to the area where the victim was shot, and that the two subjects were the only people around at the time of the shooting.  (*Id*.)  Petitioner reiterates that, not only did the admission of the officers' testimony violate Rule 702 of the Michigan Rules of Evidence, the testimony violated his rights to a fair trial and to confront and cross-examine the evidence against him.  (*Id*. at PageID.74-75.)

Petitioner's claim that Gibson's expert testimony did not qualify as expert testimony under the Michigan Rules of Evidence lacks merit because it is a state-law claim, which is not a basis for granting the writ of habeas review.  *See Lewis*, 497 U.S. at 780; *McGuire*, 502 U.S. at 68; *Hall*, 563 F.3d at 239.   Further, as succinctly expressed by the Michigan Court of Appeals, "Gibson's testimony was based on his technical knowledge of cropping and enlarging videos, and his

experience in enlarging videos and identifying subjects composed of enlarged pixels." *Davis*, 2015 WL 8953522, at *8.

The Court of Appeals agreed with Petitioner that the trial court erred in allowing Gibson to testify regarding his enhancement of a still photograph to read the license plate on the subjects' vehicle. *Id.* But the Court of Appeals determined that the error was harmless, and the court's analysis was based on both Michigan Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993).

> In *Daubert,* the Supreme Court held that district courts must act as "gatekeepers" to protect juries from misleading or unreliable expert testimony by assessing the reliability of the expert's principles and methodologies used to reach the expert opinion or conclusion. *Daubert,* 509 U.S. at 589, 592–93, 113 S.Ct. 2786. Factors to be considered in assessing reliability include whether the expert's theory may be tested or refuted, the degree of acceptance of the theory or technique within the relevant community, and whether the theory has been a subject of peer review or publication. *Id.* at 593–94, 113 S.Ct. 2786.

*Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 851 (6th Cir. 2004).

"The Supreme Court did not set a constitutional floor for the reliability of scientific evidence in *Daubert, see Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998), and screening evidence through *Daubert*'s standards is not constitutionally required." *Bojaj v. Berghuis*, 702 F. App'x 315, 321 (6th Cir. 2017). *Daubert* "concerned the Federal Rules of Evidence which [are] not relevant to [Petitioner's] conviction." *Norris*, 146 F.3d at 335.

Sergeant Gibson, moreover, testified that he did not alter the substance of the original videotapes, that the original data was available for viewing, and that he merely changed the format.   (10/25/13 Trial Tr., ECF No. 7-12, PageID.813-816.) Petitioner has no right to relief on his claim about Sergeant Gibson's use of technical methodology to enlarge, crop, and otherwise manipulate the surveillance videotapes.

## C.  The Prosecutor's Use of Photographs and Videotapes

Petitioner alleges that the prosecutor violated his right to a fair trial by relying on five photographs and a videotape that were not admitted in evidence.  (ECF No. 1, PageID.76.) The five photographs were proposed exhibits 66-69 and 73, and the videotape was a compilation of segments from the original videotapes placed in chronological order.   Petitioner argues under state law that these items should not have been shown to the jury because they were not admitted in evidence.  (*Id.* at PageID.76-78.)

The Court "may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The transcript of trial, moreover, indicates that the prosecutor moved to admit the photographs before a brief recess in the trial.  (10/25/13 Trial Tr., ECF No. 7-12, PageID.822.)  Although there was no express ruling on the exhibits after the recess, the prosecutor stated that the xhibits were admitted.  (*Id*. at PageID.823.)

Even if there was no formal admission of the photographs in evidence, they were derived from the videotapes, which were admitted as exhibits 104 and 105. (*Id.* at PageID.812-818.)   The Michigan Court of Appeals reasonably concluded that any error in the admission of the photographs was harmless. *Davis*, 2015 WL 8953522, at *7.  The Court of Appeals also determined that the failure to admit the composite videotape was harmless error, because it was a compilation of still photographs taken from other videotapes. *Id.*

On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence" on the verdict, *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993), and the state error resulted in actual prejudice, *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015)). The alleged failure to admit the photographs and composite videotape did not result in actual prejudice and could not have had a substantial or injurious effect on the jury's verdict because the evidence was duplicative of other evidence.  Habeas relief is not warranted on Petitioner's claim.

**D.    Sufficiency of the Evidence**

Petitioner argues that the jury's verdict was against the great weight of the evidence and that the evidence at trial was insufficient to sustain his conviction.   He asserts that there was insufficient evidence to conclude that he shot the victim or that he was anything more than merely present during the shooting.   There was no

testimony at trial that Petitioner possessed or fired a gun, and Petitioner maintains that it is as reasonable to infer that he was merely present during the shooting as it is to infer that he played some role in the shooting.   (ECF No. 1, PageID.78-79.) Petitioner also contends there was insufficient evidence that he aided and abetted the shooter or intended to commit second-degree murder, as opposed to some other crime, such as robbery or larceny.  (*Id.* at 80.)

### 1.  Clearly Established Federal Law

The contention that the jury's verdict was against the weight of the evidence is a state-law argument, and a federal habeas court may only review issues of federal law.  *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007).  The only question on habeas review of a challenge to the sufficiency of the evidence is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  The Court's "review of a state-court conviction for sufficiency of the evidence is very limited" because the Court "give[s] two layers of deference to state-court convictions."  *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of

the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*) (citations and internal quotation marks omitted).  "Circumstantial evidence may support a conviction, *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), and such evidence need not remove every reasonable hypothesis except that of guilt.  *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995)."  *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and in Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.  *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996).

> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980).

*People v. Goecke*, 457 Mich. 442, 463; 579 N.W.2d 868, 878 (1998).   "The facts and circumstances of the killing may give rise to an inference of malice. . . .  Malice may also be inferred from the use of a deadly weapon."  *People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999).

> Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person

is an aider and abettor. *People v. Rockwell,* 188 Mich. App. 405, 412, 470 N.W.2d 673 (1991). The phrase "aiding and abetting" describes all forms of assistance rendered to the perpetrator of a crime. *Id.* at 411, 470 N.W.2d 673. It includes all words or deeds that may support, encourage, or incite the commission of a crime. *People v. Palmer,* 392 Mich. 370, 220 N.W.2d 393 (1974).

*People v. Wilson*, 196 Mich. App. 604, 614; 493 N.W.2d 471, 476 (1992).

## 2. Application

A death obviously occurred, and the victim's three gunshot wounds suggest that the shooter or shooters acted with malice. The events depicted on the videotapes indicated that there was no justification or excuse for the shooting. The victim made a purchase at the market and apparently had no interaction with the suspects before he walked down Warren Avenue and was followed by the suspects.

The main question was whether Petitioner caused the death or aided and abetted someone else in shooting and killing the victim. The evidence at Petitioner's trial

> established that Davis and Harvey arrived at the market together, in a blue Buick driven by a third person. They entered the store separately, but met inside the store and left together. However, they did not leave in the car, and instead followed the victim out of the parking lot and across the street on foot. They moved quickly toward the victim, coming closer to him. A very short time after they left the camera ranges, the victim was shot, and Harvey or Davis got into the Buick, which the driver had moved to the location of the shooting.

*Davis*, 2015 WL 8953522, at *9.

A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner shot the victim or aided and abetted Harvey in shooting the victim.   In the state court's words, "Harvey and Davis's coordinated plan and movement supports an inference that they acted jointly, pursuant to a common plan, although only one of them fired a weapon." *Id*.  Further,

> [t]here were no apparent alternate explanations for why the defendants followed the victim instead of getting back into the Buick they came in, or why they immediately left the scene after the victim was shot.  There also was no evidence suggesting another perpetrator.

*Id*. at *10.

Petitioner, nevertheless, contends that there was insufficient evidence that the victim of the crime for which he was charged was Warrington Calvin Bryant. Although one of Mr. Bryant's daughters identified Mr. Bryant at the morgue, Petitioner points out that the daughter did not testify about where her father died, when he died, or how he died, and the medical examiner who performed the autopsy on Mr. Bryant did not connect Mr. Bryant to the body found by the police.   (ECF No. 1, PageID.81-82.)   The Court of Appeals found no merit in this argument because

> [t]he combination of the video evidence, the testimony of the officers who arrived at the homicide scene, and the identification testimony of the victim's daughter was sufficient to establish beyond a reasonable doubt that the identified victim was the same person who walked away from the market and was fatally shot a short distance from the market.

*Davis*, 2015 WL 8953522, at *10.  This Court agrees.

The evidence was sufficient to sustain Petitioner's conviction, and the state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Jackson*. Petitioner is not entitled to habeas corpus relief on his challenge to the sufficiency or weight of the evidence.

## E.  The Jury Instructions

Petitioner asserts that the trial court violated his rights to due process and a fair trial by instructing the jury on flight and by declining to instruct the jury on voluntary manslaughter. (ECF No. 1, PageID.83-85.) The Michigan Court of Appeals rejected both arguments.

### 1.  Voluntary Manslaughter

Petitioner contends that the trial court should have instructed the jury on voluntary manslaughter as a lesser-included offense of murder, because there was evidence of provocation. To support this contention, Petitioner points out that the victim had two contusions on his arms and that he was armed with a gun. According to Petitioner, this was strong circumstantial evidence that there was a physical fight or altercation of some kind and that the shots were fired during an affray and in the heat of passion. (*Id.* at PageID.84-85.) The Michigan Court of Appeals disagreed and concluded that the trial court did not abuse its discretion by failing to instruct the jury on voluntary manslaughter, because there was no evidence of provocation, an essential element of voluntary manslaughter.

This Court finds no merit in Petitioner's claim, because the Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital cases violates the right to due process. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (stating that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case"). The "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.' " *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)). "Declining to grant a request to 'present a state-created, not federally required, defense is . . . at worst . . . an error of state law; and . . . . a violation of state law does not violate the Constitution." *Keahey*, 978 F.3d at 479 (quoting *Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995) (en banc)).

Even if Petitioner's claim were cognizable here, the element of provocation is what distinguishes manslaughter from murder. *People v. Pouncey*, 437 Mich. 382, 388; 471 N.W.2d 346, 350 (1991). Voluntary manslaughter has the following components:

> First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions.

*Id.* The provocation is adequate if it would cause a reasonable person to lose control. *Id.*, 437 Mich. at 389; 471 N.W.2d at 350.

There was no evidence at trial that the victim did anything to provoke Petitioner or Harvey or even that he interacted with them before they pursued him. Petitioner, nevertheless, argues that contusions or bruises on the victim's arms were proof that there was an altercation and provocation.

The medical examiner's testimony undermines Petitioner's argument. She testified that the victim was shot three times and that one of the potentially incapacitating injuries was consistent with the victim's arm being down when he was shot. (10/24/13 Trial Tr., ECF No. 7-11, PageID.670-671.) Another bullet entered the victim from the back (*id.* at PageID.671-673), and the contusions were consistent with an assault (*id.* at PageID.681). The victim apparently was carrying a weapon on his person before the shooting, but his daughter testified that he carried the gun for protection because the neighborhood was not safe. (*Id.* at PageID.697.)

In the absence of any evidence of provocation, the trial court did not violate Petitioner's rights to due process or a fair trial by failing to instruct the jury on voluntary manslaughter. The state appellate court's rejection of Petitioner's claim for lack of merit was not contrary to, or an unreasonable application of, any Supreme Court decision.

## 2. Flight[3]

Petitioner asserts that the trial court should not have instructed the jury on flight because, at most, he left the scene of a violent event and that is not evidence of flight.   The Michigan Court of Appeals disagreed and concluded that "the flight instruction was appropriate."  *Davis*, 2015 WL 8953522, at *11.   The Court of Appeals  reached this conclusion after summarizing the evidence as follows:

> The evidence indicated that Harvey and Davis arrived at the market in a blue Buick, but left the market's parking lot on foot, proceeding in the same direction as the victim.  After the victim was shot, the suspects entered a waiting car and left the scene in the car.   This evidence supported an inference that Davis fled the crime scene because of his involvement in the victim's shooting death.

*Davis*, 2015 WL 8953522, at *11.

Petitioner argues that the Michigan Court of Appeals misread the trial testimony when it stated that the suspects entered a waiting car and left the scene in the car.  There was no direct evidence that the two suspects who followed the victim entered a waiting car after the shooting, and the Supreme Court "has consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963).

---

[3] Petitioner's argument on this issue appears on page 39 of his state appellate brief. That page is missing from the scanned copy of the habeas petition, but it is visible in the volume containing the parties' briefs in the Michigan Supreme Court. *See* ECF No. 7-19, PageID.1461.

But one witness testified that he saw a person run to a car on McKinley Street at the time of the shooting; although the witness did not see the person get in the car, he saw the car drive away.  (10/25/13 Trial Tr., ECF No. 7-12, PageID.715-716, 721).  Another witness admitted that, in his statement to the police on the day after the shooting, he informed the police that a man jumped into a car which drove southbound on McKinley Street.  (*Id*. at PageID.729-733.)  Ms. Pullen saw a car cross Warren Avenue on McKinley Street after she heard three gunshots.  The car stopped briefly and then sped away.  (*Id*. at PageID.744-747, 758.)   And according to Sergeant Gibson's interpretation of the videotape, the car stopped, a light came on consistent with a car door opening, and the car then moved out of sight.  (10/28/13 Trial Tr., ECF No. 7-13, PageID.859-860.)

The jurors could have inferred from this evidence that the two suspects fled from the scene of the crime after the shooting.  Under state law, "[t]he term 'flight' has been applied to such actions as fleeing the scene of the crime . . . ." *People v. Coleman,* 210 Mich. App 1, 4; 532 NW2d 885, 887 (1995) (citing 29 AmJur2d, Evidence, § 532, p. 608).  The trial court, therefore, did not violate Petitioner's rights to due process and a fair trial by instructing the jury on flight.

Even if the trial court erred by instructing on flight, "instructions that contain errors of state law may not form the basis for federal habeas relief," *Gilmore v.*

*Taylor*, 508 U.S. 333, 342 (1993), and the trial court did not say that flight was proof

of guilt.  Instead, the court said:

> Now there has been some evidence that the defendant ran away after
> the alleged crime.  This evidence does not prove guilt.  A person may
> run or change his hair style for innocen[t] reasons.

(10/29/13 Trial Tr., ECF No. 7-14, PageID.1008.)   The court subsequently gave

another instruction on flight, stating:

> There may have been some evidence that the defendant tried to
> run away after the alleged crime.  This evidence does not prove guilt.
>
> A person may run or hide for innocent reasons such as panic,
> mistake or fear.  However, a person may also run or hide because of a
> consciousness of guilt.
>
> You must decide whether the evidence is true and if true whether
> it shows that the defendant had a guilty state of mind.

(*Id.* at PageID.1014-1015.)

These instructions did not undermine the presumption of innocence, and

because there was circumstantial evidence that Petitioner left the area after the

shooting, he has no right to relief on his claim about the jury instruction on flight.

## F.  The Prosecutor

Petitioner alleges that repeated instances of prosecutorial misconduct during

closing arguments deprived him of due process and a fair trial.  (ECF No. 1,

PageID.86.)   Petitioner asserts that the prosecutor argued facts not in evidence,

appealed to the jury's sympathy, and vouched for Sergeant Gibson's credibility. (*Id.* at PageID.87-89.)

Petitioner maintains that the prosecutor's conduct was not harmless and that, even if the individual instances of prosecutorial misconduct are not considered reversible, they require reversal when viewed in the aggregate. (*Id*. at PageID.90.) Petitioner also argues that, if the Court considers his argument forfeited due to his trial attorney's failure to object to the prosecutor's conduct, relief should be granted on the ground of ineffective assistance of trial counsel. (*Id*.)

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting [Petitioner's] substantial rights" because Petitioner did not object to the prosecutor's remarks at trial. *Davis*, 2015 WL 8953522 at *12. The Court of Appeals then stated that, to the extent the prosecutor mischaracterized Ms. Pullen's testimony, the misstatement did not materially detract from, or add to, the prosecution's proofs, and the trial court's instruction -- that the attorneys' statement and arguments were not evidence – dispelled any prejudice and protected Petitioner's rights. *Id.*

The Court of Appeals opined that the prosecutor's remarks about ballistics were not improper. As for the prosecutor's remarks about the victim, the Court of Appeals stated that the remarks were not a blatant appeal to the jury's sympathy, and even if the remarks were considered improper, the trial court's jury instruction -- that

the jury should not be influenced by sympathy -- protected Petitioner's rights. *Id*. The Court of Appeals did not address Petitioner's argument that the prosecutor vouched for Sergeant Gibson's credibility.

### 1. Procedural Default

The State argues that Petitioner's claim is procedurally defaulted because the Michigan Court of Appeals reviewed Petitioner's claim for "plain error." The doctrine of procedural default generally precludes a federal court from reviewing the merits of a state prisoner's claims when the state court declined to hear the claims due to the prisoner's failure to abide by a state procedural rule. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Stated differently, "[w]hen a state court refuses to consider a habeas claim 'due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.' " *Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016) (quoting *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 73, 80, 84-87 (1977)).

> A petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Sykes*, 433 U.S. at 87, 90-91, 97 S. Ct. 2497. In order to establish cause, a habeas corpus petitioner must show that "some objective factor external to the defense" prevented the petitioner's compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L.Ed 2d 397 (1986).

*Id*.

The relevant state procedural rule here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to preserve an issue of prosecutorial misconduct by making a timely contemporaneous objection and requesting a curative jury instruction. *People v. Bennett*, 290 Mich. App. 465, 475; 802 N.W.2d 627, 634-35 (2010). Petitioner violated this rule by failing to object at trial to the prosecutor's closing argument.

The Michigan Court of Appeals enforced the contemporaneous-objection rule by reviewing Petitioner's claim for "plain error." Michigan's contemporaneous-objection rule is an adequate and independent state ground for denying review of a federal constitutional claim, because it is both well-established and normally enforced. *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011). The remaining issue is whether Petitioner has shown "cause" for his procedural default and resulting prejudice.

Petitioner asserts that his trial attorney's ineffectiveness was cause for his failure to object to the prosecutor's disputed remarks. (ECF No. 1, PageID.96.) Constitutionally ineffective assistance of counsel can be cause for a procedural default. *Carrier*, 477 U.S. at 488; *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). But to prevail on a claim about trial counsel, Petitioner must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To evaluate whether trial counsel was ineffective, the Court looks to Petitioner's underlying claims about the prosecutor's remarks. The relevant question on review of a prosecutor's closing argument "is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

### 2. Facts not in Evidence

#### a. Ms. Pullen's testimony

Petitioner claims that the prosecutor distorted Purvis Charlene Pullen's testimony when he said that Ms. Pullen: ran to her window, looked out and saw an argument (10/28/13 Trial Tr., ECF No. 7-13, PageID.935-36); heard some yelling (*id*. at PageID.940); heard some shots on one side of the road, and then heard shots coming from the car (*id.* at PageID.942-43).

Petitioner is correct that Ms. Pullen did not testify that she heard an argument, yelling, or any shots coming from the car. Instead, she testified that she heard a voice or voices coming from the car and that she heard three gunshots before she went to the window. (10/25/13 Trial Tr., ECF No. 7-12, PageID.744, 747, 753-754, 756.)

"It is improper for a prosecutor, during closing arguments, to bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial.'

" *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)).   But the prosecutor's misstatement about Ms. Pullen's testimony did not prejudice Petitioner, because the prosecutor told the jurors two times that, if he said something about the evidence that was not what they recalled, they should ignore him and not listen to him, because they were the judges of the facts.  (10/28/13 Trial Tr., ECF No. 7-13, PageID.740-741.)

What is more, whether Ms. Pullen heard voices or whether she heard an argument and yelling was inconsequential.  Even the misstatement that Pullen heard gunshots coming from the car was inconsequential, because the videotapes showed Petitioner and Harvey following the victim on foot.  For these reasons, trial counsel was not ineffective for failing to object to the prosecutor's remarks about Ms. Pullen's testimony.

### b.  Ballistics

Petitioner next contends that the prosecutor relied on facts not in evidence by giving the jury the following "lesson" on ballistics:

> But we have two bullets here both 40 calibers[.]  Michigan State Police report says they were both 40 calibers.  But not only were they both calibers but they had the same number [of] what they call land and grooves through the barrel which are rigid and which makes the bullet spin.
>
> The same number meaning of the similar manufacturer barrel and the same caliber.

(*Id*. at PageID.942.)   According to Petitioner, these comments were meant to convince the jury that a bullet taken from the victim's body and a bullet of unknown origin were fired from the same weapon.

Petitioner fails to point out that, immediately after making the remarks quoted in the previous paragraph, the prosecutor said that the person who analyzed the bullets "couldn't say exactly [if] it was from the same gun[;] it wasn't enough details to compare." (*Id*).   The parties also stipulated that the two bullets "could not be identified or eliminated as having been fired in the same barrel due to the lack of microscopic markings in sufficient agreement." (*Id.* at PageID.926-927.) Because the prosecutor's "lesson on ballistics" was not prejudicial, trial counsel was not ineffective for failing to object to the remarks.

### 3.  Appealing to the Jury's Sympathy

Petitioner claims that the prosecutor made an improper appeal to the jury's sympathy when he said:

> Calvin Warrington Bryant was a man and father.  A man that lived in our community and he is no longer with us[;] he's dead.

> He was shot to death on December 1st, 2012.  We never got to hear from him.

(*Id*. at PageID.933.)

Prosecutors have a "duty to refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States,* 318 U.S. 236, 248 (1943),

and "numerous cases hold that prosecutorial statements solely designed to inflame the jurors' passions are not appropriate." *United States v. Beasley*, 700 F. App'x 394, 398 (6th Cir. 2017) (internal and end citations omitted). But the prosecutor's comments about Mr. Bryant were based on obvious facts gleaned from the testimony at trial.

The trial court, moreover, charged the jury not to let sympathy influence their decision (10/29/13 Trial Tr., ECF 7-14, PageID.1003), and juries are presumed to follow a court's instructions to them. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). Trial counsel's failure to object to the prosecutor's remarks about the victim did not prejudice the defense.

### 4. Vouching for Sergeant Gibson's Credibility

Petitioner's final argument about the prosecutor is that the prosecutor vouched for Sergeant Gibson's credibility when he said:

> The video production[;] a lot of suggestions [were] put out there for you to conclude that Sergeant Gibson made this video up.
>
> You think there was evidence of that [then] God bless you[,] I don't. Sergeant Gibson didn't alternate (sic)[;] he cropped and enlarged[;] that's what he testified to you.

(10/29/13 Trial Tr., ECF No. 7-14, PageID.1001.)

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecuting attorney] behind that witness. *See, e.g., Taylor v. United States,* 985 F.2d 844,

33

846 (6th Cir. 1993); *United States v. Martinez,* 981 F.2d 867, 871 (6th
Cir. 1992).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (alteration added).

The prosecutor at Petitioner's trial expressed his personal belief that Sergeant
Gibson did not fabricate the videotapes, but he did not imply that he had special
knowledge of facts not before the jury.  He appears to have made the remark in
response to defense counsel's remarks during closing argument where she said that:
the video had been amplified and altered, invisible things were inferred, and the
video did not seem to say what Sergeant Gibson said; Gibson put together a
production that was offensive and which meant that "you get to put things where
you want them and make it look like he did something;" the video was enhanced
three to five hundred percent even though the surveillance cameras went only 40
feet; Gibson "fixed" Ms. Pullen's testimony that she did not see one person on the
street; Gibson said it looked like a car door opening even though he said that for the
first time at trial and previously testified that he lost sight of the car and did not know
where it went; Gibson was selling a story to the jury to save the day; and Gibson's
video insulted her intelligence.  (10/29/13 Trial Tr., ECF No. 7-14, PageID.979, 984-
985, 990, 995.)

The prosecutor was "entitled to wide latitude in rebuttal argument" and to
"fairly respond to arguments made by defense counsel."  *Angel v. Overberg*, 682
F.2d 605, 607-08 (6th Cir. 1982) (citing *DeChristoforo*, 416 U.S. 637).   Trial

counsel's failure to object to the prosecutor's remarks, therefore, did not amount to deficient performance.

The trial court, moreover, charged the jurors that it was their job to decide the facts based on the admissible evidence and that they should decide which witnesses they believed and how important they thought the testimony was.  (10/29/13 Trial Tr., ECF No. 7-14, PageID.1004, 1006-1007, 1009.)  The court told the jurors that they did not have to accept everything a witness said, not even an expert's opinion, and that they were free to believe all, none, or part of any person's testimony.  (*Id*. at PageID.1009, 1011.)    The trial court also stated that the lawyers' statements and arguments were not evidence and were only meant to help the jury understand the evidence and each side's legal theories.  (*Id.* at PageID.1006.)  In light of these instructions, trial counsel's failure to object to the prosecutor's alleged vouching did not prejudice the defense.

### 5. Summary

The prosecutor's disputed remarks did not infect Petitioner's trial with such unfairness as to make the resulting conviction a denial of due process.   Trial counsel's failure to object to the prosecutor's remarks, therefore, was not constitutionally ineffective assistance or "cause" for Petitioner's procedural default, and Petitioner has failed to show that he was prejudiced by his procedural default.

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim only if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  *Lundgren v Mitchell,* 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496.)  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new and credible evidence of actual innocence, and a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of Petitioner's prosecutorial-misconduct claim.  As a result, Petitioner's prosecutorial-misconduct claim fails.

## G.  Denial of an Evidentiary Hearing; Trial Counsel

In his seventh claim, Petitioner asks to have his case remanded to the trial court for an evidentiary hearing on his claims about his trial attorney.  (ECF No. 1, PageID.91-94.)  Petitioner states that his attorney was ineffective because she did not object to (1) the prosecutor's allegedly improper remarks during closing

arguments (*id*. at PageID.92-93), and to (2) testimony about five photographs and a chronological videotape that were never admitted in evidence (*id*. at PageID.93.)

The Michigan Court of Appeals denied Petitioner's request for an evidentiary hearing for more than one reason:  Petitioner did not raise his ineffectiveness claim in a motion for a new trial or an evidentiary hearing; his motion for a remand was untimely; and the court rule that he cited for the state court's remand authority was inapplicable.  *Davis*, 2015 WL 8953522, at *12.  The Court of Appeals then cited the correct standard of review for ineffective-assistance-of-counsel claims and concluded that Petitioner's ineffectiveness claim lacked merit.  *Id*. at *13.

### 1.  Legal Framework

Petitioner points to no Supreme Court holding that requires state courts as a matter of due process to hold an evidentiary hearing on a claim about trial counsel. And the contention that the state court improperly denied him an evidentiary hearing on his claim about trial counsel is not cognizable in a habeas corpus proceeding. *Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009).

To prevail on his substantive claim about trial counsel, Petitioner must show that trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.

Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

 "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 2.  Failure to Object

The Court concluded above that trial counsel was not ineffective for failing to object to the prosecutor's allegedly improper remarks during closing arguments. *See* Section III.F.5.  Petitioner's only other claim about trial counsel is that she failed to object to testimony about five photographs and a composite videotape that were not admitted in evidence.

Trial counsel did object to Sergeant Gibson's testimony about the composite videotape.  (10/28/13 Trial Tr., ECF No. 7-13, PageID.845, 848-850, 855.)  She made so many objections that the trial court suggested to counsel that she stop making the same objection.  (*Id*. at PageID.850.)  Trial counsel also cross-examined Gibson about the compilation videotape (*id*. at PageID.865-891), and as pointed out above, a portion of her closing argument consisted of attacking Gibson's production of the videotape and his testimony about what the videotape depicted.

The Michigan Court of Appeals, moreover, stated that trial counsel was not required to object to the photos and videotape because they were duplicative of other evidence that was admitted.  *Davis*, 2015 WL 8953522, at *13.  Any objection to the disputed items or to testimony about the items would have lacked merit, and "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

The state appellate court's rejection of Petitioner's ineffectiveness claim was not contrary to, or an unreasonable application of, *Strickland*.  Petitioner, therefore, has no right to relief on his claim.

## H.  Cumulative Errors

In his eighth and final claim, Petitioner argues that, even if no single assignment of error is sufficient for reversal, the totality of trial errors deprived him of a fair trial.  (ECF No. 93-94.)  The Michigan Court of Appeals rejected this claim

because, in its opinion, Petitioner had established only two meritorious issues,[4] the errors were harmless, and when considered cumulatively, they did not deprive Petitioner of a fair trial.  *Davis*, 2015 WL 8953522, at *14.

This Court finds no merit in Petitioner's argument because "the Supreme Court has not recognized cumulative error as a basis for relief in non-capital cases." *Kissner*, 826 F.3d at 903–04.  Therefore, it cannot be said that the decision of the Michigan Court of Appeals was contrary to any Supreme Court decision so as to warrant habeas relief under AEDPA.  *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).

## IV.  Conclusion

Petitioner's prosecutorial-misconduct claim is procedurally defaulted, and the state appellate court's adjudication of his other claims was not objectively unreasonable or so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  The Court, therefore, denies the petition for a writ of habeas corpus.

The Court declines to grant a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims, nor

---

[4] The Court of Appeals stated that the two meritorious issues, were:  "(1) the trial court's admission of Gibson's testimony that he used unspecified technology to 'flatten' and read a photograph of an angled license plate, and (2) the failure of the prosecutor to formally admit the sequential video into evidence."  *Davis*, 2015 WL 8953522, at *14.

conclude that the issues deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Petitioner, nevertheless, may proceed *in forma pauperis* on appeal if he appeals this decision because an appeal could be taken in good faith.  28 U.S.C. §1915(a)(3).


<u>S/DENISE PAGE HOOD</u>
DENISE PAGE HOOD
CHIEF JUDGE, UNITED STATES DISTRICT COURT

Dated:  September 30, 2021


I hereby certify that a copy of the foregoing document was served upon counsel of record or party on September 30, 2021, by electronic and/or ordinary mail.


<u>S/Teresa McGovern</u>
Case Manager